IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

AUG 2 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

BIODIVERSITY CONSERVATION ALLIANCE )
1536 Wynkoop, Suite B501 )
Denver, CO 80202, )
)
CENTER FOR NATIVE ECOSYSTEMS )
1536 Wynkoop, Suite 302 )
Denver, CO 80202, )
)
JEREMY NICHOLS )
423 Kalamath )
Denver, CO 80204, )

CASE NUMBER   1:06CV01489

JUDGE: Richard J. Leon

Plaintiffs,

v.

DECK TYPE: Administrative Agency Review

DIRK KEMPTHORNE
Secretary of the Interior
1849 C Street, NW
Washington, DC 20240,

DATE STAMP: 08/24/2006

DALE HALL
Director
U.S. Fish & Wildlife Service
1849 C Street, NW
Washington, DC 20240,

Defendants.

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.     Through this civil action, Plaintiffs Biodiversity Conservation Alliance, Center for Native Ecosystems and Jeremy Nichols challenge Defendants' failure to comply with the Endangered Species Act (ESA), 16 U.S.C. § 1533, in making its January 19, 2006 negative 90-day finding for the Black Hills Distinct Vertebrate Population Segment of American Dipper

(*Cinclus mexicanus uniclor*) (hereinafter "Black Hills dipper" or "dipper"), an aquatic songbird, as threatened or endangered. Despite the presence of substantial scientific information demonstrating that the Black Hills dipper is discrete, significant, and that listing of this subspecies may be warranted, Defendants concluded Plaintiffs' March 15, 2003 petition "did not present substantial scientific or commercial information indicating that listing this subspecies may be warranted." In making the 90-day finding, Defendants violated ESA requirements and Administrative Procedure Act (APA) standards.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(g) (citizen suit provision of the ESA) and 28 U.S.C. § 1331 (federal question jurisdiction). Pursuant to 16 U.S.C. § 1540(g)(2), notice has been provided to the Defendants more than 60 days prior to filing this complaint.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g). Defendants, Secretary Dirk Kempthorne and Director Dale Hall, reside, in their official capacity, in the District of Columbia. Additionally, a substantial part of the events and omissions giving rise to the claims in this case, as well as violations of mandatory duties under the ESA, occurred in the District of Columbia.

## PARTIES

4.  Plaintiff BIODIVERSITY CONSERVATION ALLIANCE (BCA) is a non-profit environmental group based in Laramie, Wyoming whose mission is to preserve biological diversity, particularly wildlife species and their habitats. Of significant concern to BCA and its members is the preservation and protection of native species in the Black Hills of western South Dakota and northeast Wyoming, including the Black Hills dipper. Staff and members of BCA conduct scientific research on the Black Hills dipper and its habitat and work on habitat protection measures for the dipper. Staff and members regularly recreate in the habitat area of the Black Hills dipper and plan to continue to do so in the future. Staff and members seek to ensure that the full complement of native species exists in their native habitat, including the

Black Hills dipper, in the United States. Staff and members seek to compel those agencies charged with protecting endangered and threatened species to follow the laws designed to protect those species. The above-described educational, scientific, aesthetic, spiritual, conservation, and recreational interests of BCA, its staff and supporters, have been, are being, and unless this Court grants the requested relief, will continue to be adversely affected and irreparably injured by Defendants' action.

5. Plaintiff CENTER FOR NATIVE ECOSYSTEMS is a Denver, Colorado-based non-profit, science-based conservation organization dedicated to protecting and recovering native and naturally functioning ecosystems in the Greater Southern Rockies and Great Plains, which includes the Black Hills. The Center, its staff, and members derive scientific, aesthetic, and spiritual benefit from the Black Hills dipper's existence in the wild and from the ecosystem upon which the dipper depends. Center for Native Ecosystems assisted with the drafting of the petition to list the Black Hills dipper. Center for Native Ecosystems staff and members regularly recreate in the habitat area of the Black Hills dipper and plan to continue to do so in the future. The above-described educational, scientific, aesthetic, spiritual, and conservation interests of the Center, its staff and members, have been, are being, and unless this Court grants the requested relief, will continue to be adversely affected and irreparably injured by Defendants' action.

6. Plaintiff JEREMY NICHOLS prepared the petition for the Biodiversity Conservation Alliance after spending hundreds of hours researching the Black Hills dipper and its habitat and submitted it to Defendants. Mr. Nichols, an amateur naturalist and nature enthusiast, continues to monitor the status of the Black Hills dipper and its habitat, especially through advocacy for better management of the Black Hills National Forest, which comprises 1.2 million acres of the Black Hills. Mr. Nichols also enjoys observing dippers in the Black Hills and looks forward to being able to show his three and a half year old son to the Black Hills to enjoy observing dippers. Mr. Nichols has a personal, educational, scientific, and aesthetic interest in the Black Hills dipper's survival and recovery. The above-described educational, scientific research, aesthetic, and conservation interest of Mr. Nichols have been, are being, and

unless this Court grants the requested relief, will continue to be adversely affected and irreparably injured by Defendants' action.

7.   Defendant DIRK KEMPTHORNE is sued in his official capacity as the Secretary of the Interior ("Secretary"). The Secretary is the federal official who bears ultimate responsibility for implementation of the ESA, including making determinations on petitions to list species.

8.   Defendant DALE HALL is sued in his official capacity as the Director of the United States Fish and Wildlife Service ("FWS"). Mr. Hall is legally charged with administering the ESA, including review and approval of proposed listing decisions for endangered and threatened species.

## THE ENDANGERED SPECIES ACT

9.   The ESA "provide[s] a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b). To achieve its objectives, the ESA directs FWS to determine which species of plants and animals are "threatened" or "endangered." Id. at § 1533. A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." Id. at § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future." Id. at § 1532(20).

10.   A species may be listed as endangered or threatened if FWS finds that any one or more of the following factors ("listing factors") are present:

   (a)   the present or threatened destruction, modification or curtailment of its habitat or range;

   (b)   overutilization for commercial, recreational, scientific or educational purposes;

   (c)   disease or predation;

   (d)   the inadequacy of existing regulatory mechanisms; or

   (e)   other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1); 50 C.F.R. § 424.11(c).

11.   Any interested person may file a petition with FWS to list a species as threatened or endangered under the ESA. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a). Upon receipt,

FWS must review the petition and within 90 days make a finding as to whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1). "Substantial information" is the "amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b). This finding is commonly called the "90-day finding."

12. In making the 90-day finding, FWS must consider whether the petition:

   (a)  Clearly indicates the administrative measure recommended and gives the scientific and common name of the species involved;

   (b)  Contains detailed narrative justification for the recommended measure, describing, based upon available information, past and present numbers and distribution of the species involved and any threats faced by the species;

   (c)  Provides information on the status of the species over all or a significant portion of its range; and

   (d)  Is accompanied by appropriate supporting documentation in the form of bibliographic references, reprints of pertinent publications, copies of reports or letters from authorities, and maps.

50 C.F.R. § 424.14(b)(2).

13. In making a 90-day finding, FWS takes into account information submitted with and referenced in the petition and all other information readily available in the Service's files. 71 Fed. Reg. 4341.

14. At the 90-day finding stage, the FWS does not reach the ultimate conclusion as to whether listing is, in fact, warranted. Rather, the 90-day finding merely considers whether a petition states a reasonable case that any petitioned species may be a listable entity. 71 Fed. Reg. 4341-4342;

15. If FWS concludes in its 90-day finding that the petition does not present substantial information indicating listing may be warranted, the listing process concludes. The ESA expressly provides that such a negative 90-day finding may be challenged in federal court. 16 U.S.C. § 1533(b)(3)(C)(ii).

16. If FWS concludes in its 90-day finding that the petition does present substantial information indicating listing may be warranted, FWS must publish a notice of its finding in the Federal Register. 16 U.S.C. § 1533(b)(3)(A). FWS must then commence a status review of the species and make a formal "warranted" or "not warranted" listing determination within 12 months of receipt of the petition. 40 C.F.R. § 424.14(b)(3). Such determinations must be made "solely on the basis of the best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A); 50 C.F.R. § 424.11(b). Under the ESA, listed species are provided several procedural and substantive protections designed to recover the imperiled species and prevent extinction. See, e.g., 16 U.S.C. §§ 1533(f) (recovery plans), 1536(a)(2) (consultations), and 1538(a)(1)(B) and (G) (prohibition against takings).

17. "Species" is defined to include "any subspecies of fish or wildlife or plants, and any distinct population segment ("DPS") of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16). Thus, under the ESA, the FWS can designate a particular population of a species as a DPS and then consider that DPS as a species for listing purposes. 16 U.S.C. §§ 1532(16), 1533(a)(1).

18. Since the ESA does not define "distinct population segment," the FWS and the National Marine Fisheries Service jointly promulgated the *Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act*, 61 Fed. Reg. 4722 (Feb. 7, 1996) (hereinafter "DPS Policy"), which sets out the criteria that are to be addressed in determining the existence of a DPS and the appropriateness of listing under the ESA. The ability to designate and list DPSs allows the FWS to provide different levels of protection to different populations of the same species. DPS Policy, 61 Fed. Reg. at 4725; see also S. Rep. No. 96-151, at 7 (1979).

19. In analyzing a petition to list a DPS of any species at the 90-day finding stage, the FWS considers whether a petition states a reasonable case that the petitioned population may be a listable entity, or that the population may warrant listing. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1).

20. Under the DPS Policy, a DPS must be discrete "in relation to the remainder of the species to which it belongs" and significant "to the species to which it belongs." 61 Fed. Reg. at 4725.

21. A DPS is considered discrete if it is either: (1) markedly separate from other populations of the same species as a consequence of physical, physiological, ecological, or behavioral factors; or (2) separated from other populations by international governmental boundaries within which differences in control or exploitation, management of habitat, conservation status, or regulatory mechanisms exist. 61 Fed. Reg. at 4725. This standard does not require *absolute* separation. DPS Policy, 61 Fed. Reg. at 4724.

22. The DPS must also be biologically and ecologically "significant" to the species to which it belongs. DPS Policy, 61 Fed. Reg. at 4724-25. The FWS determines the significance of a DPS by considering the following non-exclusive factors: (1) persistence of the DPS in an ecological setting unusual or unique for the taxon; (2) evidence that loss of the DPS would result in a significant gap in the range of a taxon; (3) evidence that the DPS represents the only surviving natural occurrence of a taxon that may be more abundant elsewhere as an introduced population outside its historic range; or (4) evidence that the DPS differs markedly from other populations of the species in its genetic characteristics. 61 Fed. Reg. at 4725.

23. If a population is determined to be discrete and significant under the DPS policy, FWS looks at the conservation status of the DPS in relation to the ESA's standards, *i.e.*, does the population segment (as opposed to the species as a whole) qualify as a threatened or endangered species under the ESA. 61 Fed. Reg. 4725. The DPS's status is assessed in accordance with the listing factors set out in 16 U.S.C. § 1532(a)(1)(A)-(E) to determine whether listing is warranted.

24. At the 90-day finding stage, the FWS determines whether a petitioned population may be discrete, significant, and warrant listing under the ESA. The FWS does not reach a determination as to whether a population does, in fact, qualify as a DPS as the 90-day finding stage. Instead, the agency determines whether a petition to list a DPS presents substantial

scientific information indicating a population may constitute a DPS and therefore may warrant listing under the ESA. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1).

## FACTUAL ALLEGATIONS

A.   The Black Hills Dipper

25. The American dipper has been described as the only true aquatic songbird and is most noted for its odd dipping behavior, as well as its unique ability to live, feed, and play in the rapids and cascades of cool mountain streams throughout western North America.

26. Besides its unique behavior, the American dipper is also an important indicator of water quality. Healthy populations of American dipper indicate healthy stream ecosystems, a relationship that is an invaluable tool in assessing the overall health of the environment.

27. The Black Hills can be described as an "island in a sea of plains." The mountain range, located in western South Dakota and northeastern Wyoming, is nearly two million acres in size and is entirely separated and isolated from other mountain ranges to the west by over 150 miles of grasslands. While its geographic isolation is unique, the biological values of the Black Hills are what truly set the ecosystem apart from others. An ecological "mixing zone," the Black Hills ecosystem is comprised of species from western, eastern, northern, and central North American environments. As such, the Black Hills supports many disjunct and peripheral populations of fish, wildlife, and plant populations. And, as an isolated mountain ecosystem, the Black Hills have come to support a host of endemic species found nowhere else on Earth.

28. As an isolated mountain ecosystem, the Black Hills are incredibly fragile and extremely sensitive to environmental change. As documented today, over a century of extensive logging, road construction, mining, domestic livestock grazing, private land developments, water developments, and other activities have left the ecosystem on the verge of collapse. Old growth forest is virtually nonexistent, perennial streams suffer from water quality problems, native plants are being replaced by nonnatives, natural disturbance processes are being controlled and/or eliminated, streams have been extensively dammed and diverted, native fish are literally being eaten away by nonnative fish, and developments are replacing large amounts of forest and

riparian habitat. These impacts have taken their toll on native species. However, little has been done to curb the ecological destruction.

29. The American dipper found in the Black Hills exists as an isolated, peripheral, and genetically distinct population. The bird is at the eastern edge of its global distribution in the Black Hills, is isolated, and has evolved independently of other populations to the west. The population historically inhabited nearly all permanent, fast-flowing streams in the area.

30. Currently, nesting Black Hills dippers can be found only on two streams in the Black Hills; Spearfish Creek and Whitewood Creek. 71 Fed. Reg. 4342.

31. Populations of Black Hills dipper have declined sharply and the bird is on the brink of extinction. This decline has been attributed to poor water quality, habitat degradation, reduced or erratic flows in streams, and lack of suitable nesting habitat. Much of the bird's formerly occupied habitat is now considered sink habitat (habitat that is unable to support the long-term survival of populations) thus presenting serious limitations upon the success of local dispersal and reestablishment. Overall, breeding dippers have disappeared from at least 86% of their historical range in the Black Hills and recent counts have found only 100 birds. The dipper has been listed as Threatened by the State of South Dakota since 1996. The lowest number of dippers reported on Spearfish Creek was 10 in 1997, with only 2 nests found. 71 Fed. Reg. 4342. In 2004, the numbers of dipper reported on Spearfish Creek was approximately 49 with 31 nests attempts. Id. Whitewood Creek had 12 adults and 7 known nest attempts. Id.

B.  The Petition to List the Black Hills Dipper

32. Plaintiffs submitted a petition to list the Black Hills dipper as an endangered or threatened species on March 28, 2003. Defendants received Plaintiffs' petition to list the Black Hills dipper on March 28, 2003. In a letter dated May 20, 2003, FWS acknowledged the receipt of the petition.

33. The petition, which was over 100 pages long, drew upon over 250 sources of scientific information.

34.   On July 21, 2003, Defendants received a Notice of Intent to sue from the petitioners contending that the Service had violated the ESA by failing to make a timely 90-day finding.

35.   On August 20, 2004, Plaintiffs filed a complaint alleging the agency violated Section 4 of the ESA by failing to make a timely 90-day finding on the petition. In a stipulated settlement agreement, Defendants agreed to submit a 90-day finding to the Federal Register by January 20, 2006. *See Black Hills Dipper, et al. v. Norton et al.*, 04-cv-1293 (DDC). The settlement was signed and adopted by the District Court for the District of Columbia on January 24, 2005.

36.   Among other things, the petition called upon the Defendants to list the Black Hills dipper as threatened or endangered under the ESA because of significant population declines, habitat loss and degradation, ongoing threats to habitat, and inadequate regulatory mechanisms.

37.   The petition called upon the Secretary, through the FWS, to list the Black Hills dipper in accordance with the DPS policy. In support of recognizing the discreteness of the dipper population in the Black Hills of South Dakota, the petition presented detailed information regarding the physical isolation of the population. In support of recognizing the population as significant under the DPS policy, the petition presented detailed information, including information from the FWS, documenting the persistence of the species in an ecosystem that is unique to the species and documenting that the loss of the population would represent a significant gap in the range of the taxon. The petition also presented detailed information, including information from the FWS, supporting the high likelihood that the Black Hills dipper is genetically distinct based on its isolation in the Black Hills and the peripheral nature of the population.

C.   <u>The Negative 90-Day Finding</u>

38.   On January 19, 2006, Defendants made the required 90-day finding on the listing petition, nearly three years after it was submitted. Defendants concluded that the petition did not

present substantial information that listing the Black Hills dipper may be warranted. The finding was published in the federal register on January 26, 2006. See 71 Fed. Reg. 4341-44.

39. In making its 90-day finding, Defendants stated that the petition included "supporting information regarding the species' taxonomy and ecology, historical and current distribution, present status, and potential causes for decline," and that the Black Hills dipper has declined significantly. 71 Fed. Reg. 4342.

40. The negative 90-day finding further concluded that the petition presented substantial scientific information indicating that, under the DPS policy, the population "may be" discrete, stating:

> Substantial information is presented in the petition to indicate that the Black Hills population may be markedly separated from other populations of the American dipper as a consequence of physical factors....
>
> Information in the petition, as supported by information readily available in our files, suggests that there is a substantial physical isolation of the Black Hills population of the American dipper. Therefore, the petition presents substantial scientific information indicating that the Black Hills population of the American dipper meets a condition for discreteness under our DPS policy.

71 Fed. Reg. 4343.

41. However, the Defendants determined the Black Hills dipper was not "significant." Defendants rejected the significance of the Black Hills population of American dipper under the DPS policy and thereby determined the petition to list the Black Hills population of American dipper did not present substantial scientific information indicating listing under the ESA may be warranted. Defendants concluded the Black Hills has many unique ecological features. 71 Fed. Reg. 4343. Defendants then asserted that the population does not persist in a unique ecological setting. Id. In asserting that the population does not persist in a unique ecological setting, Defendants did not address substantial scientific information presented in the petition indicating the Black Hills dipper may persist in an ecological setting unique or unusual to the American dipper.

42. Defendants also concluded that "the petition does not present substantial scientific information that loss of the population segment would result in a significant gap in the range of the taxon." 71 Fed. Reg. 4343. While Defendants acknowledged that the Black Hills dipper exists on the periphery of its range, they asserted that loss of the population at the edge would not create a "gap."

43. Defendants did not address substantial scientific information presented in the petition indicating the loss of the Black Hills dipper may result in a significant gap in the range of the American dipper given the peripheral nature of the population.

44. Finally, Defendants found that while "genetic differences may exist [among the various dipper populations] these results are too preliminary to determine the significance of the Black Hills population of the American dipper to the taxon [the American dipper] as a whole." 71 Fed. Reg. 4343. Defendants concluded that substantial information indicating the Black Hills dipper may be significant with regards to its genetic differences did not exist in their files.

45. Defendants did not address substantial scientific information presented in the petition indicating that, due to the isolated and peripheral nature of the Black Hills dipper, marked genetic differences may exist between the population and other populations of American dipper.

46. Defendants ultimately concluded the petition to list the Black Hills dipper did not present substantial scientific information indicating the population may be a DPS that may warrant listing under the ESA. The Secretary concluded:

> On the basis of our review, we find that the petition does not present substantial scientific or commercial information to indicate that listing the American dipper in the Black Hills of South Dakota may be warranted. This finding is based on the lack of substantial evidence to indicate that the American dipper in the Black Hills of South Dakota constitutes a valid DPS. Although the population is discrete, neither the information in the petition nor the information readily available in our files constitutes substantial scientific information that the Black Hills dipper population is significantly unique in relation to the remainder of the taxon.

71 Fed. Reg. 4344.

## FIRST CLAIM FOR RELIEF
### Violation of the Endangered Species Act and Administrative Procedure Act

### The Petition Presents Substantial Scientific Information
### Indicating the Petitioned Action May be Warranted

47.     Each and every allegation set forth in the Complaint is incorporated herein by reference.

48.     Defendants' determination that the petition to list the Black Hills dipper and information in their files does not present substantial scientific information indicating the petitioned action may be warranted was arbitrary and not supported by the findings issued in the 90-day notice or the information presented in the petition, and/or available in its own files. See 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b).

49.     Defendants failed to consider all substantial scientific information presented in the petition indicating the Black Hills dipper may be significant in accordance with the DPS policy and therefore may warrant listing under the ESA, including information pertaining to whether the Black Hills are a unique ecological setting and whether the Black Hills population differs markedly from other populations.

50.     In doing so, the Secretary also failed to consider the best available science when determining whether the Petition presented "substantial scientific information." See 16 U.S.C. § 1533(b)(1)(A); 50 C.F.R. § 424.11(b).

51.     To the extent Defendants considered information in the petition and in their files, Defendants' determination that such information does not constitute "substantial scientific information" was not reasonably supported by the 90-day finding and was inconsistent with the information presented in the petition and available in their own files.

52.     Defendants' determination that the petition and/or information available in the files of the Defendants does not present substantial scientific information indicating listing may be warranted under the ESA violated 16 U.S.C. § 1533(b)(3)(A) and 50 C.F.R. § 424.14(b), and was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the ESA within the meaning of the Administrative Procedure Act. 5 U.S.C. § 706(2)(A).

## SECOND CLAIM FOR RELIEF

### Violation of the Endangered Species Act and Administrative Procedure Act

### Failure to use the appropriate standard when making a 90-day finding

53. Each and every allegation set forth in the Complaint is incorporated herein by reference.

54. Defendants applied the wrong standard of review in determining the Black Hills dipper was not significant under the DPS policy. Defendants concluded that the Black Hills dipper does not differ markedly from other populations of the species in its genetic characteristics and therefore is not significant to the species as a whole. In so doing, Defendants did not assess whether the petition and information readily available in their files presented "substantial scientific information" indicating the Black Hills population may be significant. Instead, Defendants assessed the petition and information readily available in its files to determine whether the population was, in fact, significant, a determination that can only be made at the 12-month finding stage and after a rigorous review of the status of the species.

55. Application of a conclusive standard as opposed to whether a petition presents substantial scientific information indicating listing may be warranted under the ESA violates 16 U.S.C. § 1533(b)(3)(A) and 50 C.F.R. § 424.14(b). Use of this improper standard is contrary to the ESA and arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2).

## THIRD CLAIM FOR RELIEF

### Violation of the Endangered Species Act and Administrative Procedure Act

### Loss of peripheral populations constitutes a significant gap in the species' range

56. Each and every allegation set forth in the Complaint is incorporated herein by reference.

57. Defendants found that "the petition does not present substantial scientific information that loss of the population segment would result in a significant gap in the range of

the taxon." 71 Fed. Reg. 4343. While Defendants acknowledged that the Black Hills population exists on the periphery of the American dippers' range it concluded that loss at the edge would not create a gap. The brief analysis and conclusion is inconsistent with other DPS listings and Defendants' acknowledgments that loss of peripheral populations constitutes a gap in the species' range.

58.     This conclusion is contrary to the ESA and arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants providing the following relief:

1.     Declare that Defendants acted arbitrarily, capriciously, in abuse of discretion and violated the ESA in making its 90-day finding that the petition to list the Black Hills dipper did not present substantial scientific information indicating the petitioned action may be warranted and that the loss of peripheral populations of the American dipper does not result in a gap in the species' range;

2.     Declare that Defendants acted arbitrarily, capriciously, in abuse of discretion and violated the ESA by applying an incorrect standard of review in their 90-day finding;

3.     Set aside or enjoin Defendants' decision that the petition did not present substantial information indicating that the Black Hills dipper may warrant listing as threatened or endangered under the ESA;

4.     Order Defendants through an injunction to issue a new 90-day finding on the petition to list the Black Hills dipper within 90 days of the order or as expeditiously as possible;

5.     Award Plaintiffs' costs, including reasonable attorneys' fees and expert witness fees and;

6.     Provide such other relief as the court deems just and proper.

Respectfully submitted,

Dated: 8/23/06

James B. Dougherty, D.C. Bar No. 939538
709 3rd Street, SW
Washington, D.C. 20024
Telephone: 202-488-1140
Facsimile: 202-488-1789